**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Robert H. CULLEN; Luzon Cullen; Commander Drug; Cullen Clinic Building, including any and all appurtenances thereto and all proceeds from the sale thereof, Defendants–Appellants,**

**and**

**Mercury Drug, Defendant.**

**No. 92–1150.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 30, 1992.

Decided Nov. 19, 1992.

Anthony Elmer Collins, Wise, Va., for appellants.

Julie Marie Campbell, Asst. U.S. Atty., Abingdon, Va. (E. Montgomery Tucker, U.S. Atty., Abingdon, Va., on brief), for appellee.

Before WIDENER, WILKINSON, and WILKINS, Circuit Judges.

OPINION

WILKINSON, Circuit Judge:

Robert Cullen was convicted of knowingly distributing controlled substances outside the scope of legitimate medical practice. In a separate *in rem* proceeding, the government sought the forfeiture of a building jointly owned by Dr. Cullen and his wife, Luzon, alleging that the building had been used to facilitate Dr. Cullen's offense. The Cullens' major contention is that the Double Jeopardy Clause of the Fifth Amendment, as interpreted by the Supreme Court in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), bars the forfeiture of the building. The district court rejected that claim and we now affirm its judgment.

I.

A federal grand jury indicted Robert and Luzon Cullen on twenty counts of distributing controlled substances through fraudulent prescriptions, 21 U.S.C. § 841(a)(1), and one count of conspiring to defraud the Department of Labor's Black Lung Program through a false billing scheme, 18 U.S.C. §§ 371, 287. Shortly after the indictment was issued, the United States filed a complaint for forfeiture *in rem* of a building in Wise, Virginia jointly owned by the Cullens. 21 U.S.C. § 881(a)(7). The building housed Dr. Cullen's clinic and a pharmacy operated by the Cullens, Commander Drug. The government alleged that the building had been used to facilitate the controlled substance violations charged in the indictment.

In July, 1989, Luzon Cullen pled *nolo contendere* to one charge of conspiring to defraud the Black Lung Program. Robert Cullen pled *nolo contendere* to one count of knowingly distributing controlled substances outside the scope of legitimate medical practice. The remaining charges against the Cullens were dismissed.

In August, 1990, the government moved for summary judgment in the forfeiture proceeding. The Cullens answered, alleging that there were genuine issues of material fact as to whether the property had

been used to facilitate the illegal distribution of controlled substances and whether they were innocent owners of the subject property. *See* 21 U.S.C. § 881(a)(7). In addition, the Cullens moved to dismiss the complaint on double jeopardy grounds.

The district court rejected the Cullens' double jeopardy claim. After a two day trial in December, 1991, the district court found that Luzon Cullen had illegally distributed controlled substances in the building to Dr. Cullen's patient, Kathy Wright. In addition, the district court found that Dr. Cullen had been willfully blind to Wright's abuse of controlled substances that Dr. Cullen had prescribed for her and other members of the Wright family. These prescriptions were written at the clinic. The district court thus concluded that there was a substantial connection between the premises and the criminal activity. The district court further concluded that the Cullens had not met their burden of establishing innocent ownership by a preponderance of the evidence and granted the forfeiture sought by the government.

The Cullens now appeal.

## II.

■ The Cullens claim that the forfeiture of the building violates the Fifth Amendment's Double Jeopardy Clause because Dr. Cullen has been punished once already for the same conduct that gave rise to the forfeiture. They claim that the value of the building (as much as $300,000 in their view) greatly exceeds any costs incurred by the government in investigating and prosecuting their case, and that the forfeiture thus constitutes punishment. They ask this court to remand to the district court for a particularized accounting of the government's damages and costs, limiting the government's recovery to that amount. We do not believe, however, that the Double Jeopardy Clause imposes any such limitation upon the government's recovery in this forfeiture proceeding.

Any sanction imposed by the government may have a retributive aspect. This need not mean, however, that the sanction constitutes punishment for purposes of double

jeopardy if the law also serves significant remedial aims. This court has held, in rejecting an Eighth Amendment challenge to a forfeiture proceeding under 21 U.S.C. § 881(a)(7), that these forfeitures do serve broad remedial purposes. *United States v. Santoro*, 866 F.2d 1538, 1543–44 (4th Cir. 1989). Forfeiture reduces incentives to engage in the drug trade, removes the instrumentalities of that trade, and helps to finance the government's law enforcement efforts. *Id.* (citations omitted).

■ The principle of *Santoro* applies in this case as well. Forfeiture of the Cullen Clinic and Commander Drug Building plainly served a remedial purpose, by removing the instrument through which the Cullens had plied their unlawful trade. Congress enacted the drug forfeiture laws to deprive offenders like the Cullens of the instruments through which they might commit further crimes. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686–87, 94 S.Ct. 2080, 2093–94, 40 L.Ed.2d 452 (1974). The removal of an instrument of the offense is not primarily an act of punishment; rather, forfeiture protects the community from the threat of continued drug dealing. *Cf. United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (Pretrial detention held not to be punitive because "preventing danger to the community is a legitimate regulatory goal."). Indeed, in an *in rem* forfeiture proceeding involving firearms, the Supreme Court rejected a double jeopardy challenge by a criminal defendant acquitted of charges involving those same firearms. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). The government's ability to promote the public safety by regulating "the widespread traffic in firearms" was held "more remedial than punitive" despite the individual deprivation occasioned by a particular forfeiture proceeding. *Id.* at 364, 104 S.Ct. at 1106.

Appellants contend that *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), undermines our holding in *Santoro*. In that case, the Supreme

Court held that the Double Jeopardy Clause barred a $130,000 civil penalty under the False Claims Act, 31 U.S.C. §§ 3729–3731, that followed a criminal conviction when the government had suffered only $585 in actual damages. The penalty was deemed punitive rather than remedial because the relief sought was so "overwhelmingly disproportionate to the damages" caused by the defendant. *Id.* at 449, 109 S.Ct. at 1902. The Supreme Court remanded for a determination of the government's damages and costs. *Id.* at 452, 109 S.Ct. at 1903.

The Cullens ask that we remand for a similar inquiry into the government's expenses in this case. We do not believe that *Halper* requires such complicated, individualized accountings in forfeiture proceedings. *Halper* involved a civil penalty intended to substitute for damages suffered by the government for the fraudulent acts committed upon it. The remedial purpose of that penalty was one of compensation, and the amount sought by the government overwhelmed any realistic estimate of the government's pecuniary loss. Here, by contrast, the government seeks the forfeiture of the Cullens' building not to compensate itself for any costs of investigation or prosecution, but to remove what had become a harmful instrumentality in the hands of the Cullens. The public danger that the building poses in the hands of the Cullens bears little relation to its monetary value, small or large.

Moreover, to limit the forfeitability of assets to the costs incurred by the government in connection with a criminal case would undercut Congress' purposes in enacting the forfeiture provisions. It would tend to exempt from forfeiture the most substantial investments in the instrumentalities of the drug trade. Granting constitutional immunity to those who employ extremely valuable assets when committing crimes would create a disparity between rich and poor defendants. As a principle of civil forfeiture, this makes little sense. So far as the public welfare is concerned, the Ferrari is at least as harmful an instrumentality as the Chevette.

Our conclusion is in accord with that of other circuits which have rejected double jeopardy challenges to *in rem* forfeiture proceedings in the aftermath of *Halper.* Those circuits have concluded, as do we, that the Double Jeopardy Clause does not apply to civil forfeitures where the property itself has been an instrument of criminal activity. *United States v. McCaslin,* 959 F.2d 786, 788 (9th Cir.1992); *United States v. 38 Whalers Cove Drive,* 954 F.2d 29, 36 (2d Cir.1992).

Appellants also urge this court to reverse the district court's factual determinations with respect to the forfeiture. We have reviewed the record and find the evidence more than sufficient to uphold the district court's determination that the subject building was substantially connected to the illegal distribution of controlled substances and that the Cullens had failed to establish that they were innocent owners of the property.

### III.

For the above reasons, the judgment of the district court is

*AFFIRMED.*