### Sylvester L. McGOWAN

v.

### UNITED STATES of America.

Nos. 3:95CV255–P, 3:92CR301–01–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 26, 1995.

Sylvester Leon McGowan, Asheville, NC, pro se.

Robert J. Higdon, Jr., Asst. U.S. Attorney, United States Attorney, Charlotte, NC, for U.S.

## ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on motion of Petitioner, filed June 8, 1995, for federal habeas relief pursuant to 28 U.S.C. § 2255. After careful review of all the files, records, transcripts and correspondences relating to the judgment under attack, for the reasons set forth herein, the Court finds the motion should be dismissed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 1993, the United States filed a civil complaint for forfeiture *in rem.* On June 23, 1993, the United States Marshal seized a 1981 Mercedes owned primarily by Sylvester McGowan.

Both McGowan and Randy Potts, a potential interested party, were served. An acknowledgement of service was filed by Potts on July 21, 1993. No claims or answers were filed. Default Judgment was entered against the property on September 2, 1993. The Default Judgment was appealed by Randy Potts on September 14, 1993. The district court's judgment was affirmed by the Fourth Circuit on May 31, 1994.

On December 8, 1992, the Grand Jury in Charlotte returned an indictment charging McGowan with 13 felony violations of federal drug, money laundering, and firearms statutes.

On April 19, 1993, Petitioner pled guilty to all counts except one of the money laundering charges. At his Rule 11 hearing, the Court conducted the standard inquiry to ensure that Petitioner's plea was knowingly, voluntarily and intelligently made.

On July 16, 1993, the Court sentenced McGowan to Two Hundred Twenty Four months on counts 1 & 10–13, and five years on each count, counts 2–8, consecutive to each other and consecutive to Ct 1 & 10–13.

Petitioner filed this § 2255 seeking to vacate his criminal conviction on the grounds that his conviction was obtained in violation of the Fifth Amendment Double Jeopardy Clause.

### II. DISCUSSION OF CLAIM

Petitioner claims that "the forfeiture and conviction were for the same offense, had in two separate proceedings" therefore, the Double Jeopardy Clause has been violated. In support of his motion Petitioner principally cites to bits and pieces of several recent Supreme Court cases, *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Austin v. U.S.,* — U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *Department of Revenue of Montana v. Kurth Ranch,* — U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). There are several reasons why Petitioner's motion should be denied and dismissed.

### I. No Double Jeopardy

■ Here, McGowan moves to vacate his conviction and sentence pursuant to § 2255 on the grounds that he was subjected to the forfeiture of his property and then to criminal sanctions as punishments for the same offense. Boiled to its essence, McGowan complains that his criminal conviction violated the Double Jeopardy Clause of the Fifth Amendment because it occurred after he had been punished for the same offense through civil forfeiture. The Court has addressed this argument before, *see Ragin v. United States,* 893 F.Supp. 570 (W.D.N.C.1995), and held that it was without merit.

■ In this Circuit, jeopardy attaches at the time a guilty plea is accepted by the Court and therefore the underlying criminal action in this case attached on April 19, 1993. *See Burgess v. Griffin,* 585 F.Supp. 1564, 1571 (W.D.N.C.1984).

■ In a civil forfeiture proceeding, this Court finds that jeopardy attaches when the final judgment of forfeiture is entered, and not when the claim or answer is filed or the property is seized. *See, generally, United States v. Stanwood,* 872 F.Supp. 791, 798–800 (D.Or.1994); *United States v. Villareal,* 875 F.Supp. 1437 (D.Or.1995); *United States v. Nakamoto,* 876 F.Supp. 235, 238 (D.Hawaii 1995); *United States v. Messino,* 876 F.Supp. 980, 983 (N.D.Ill.1995) (citing *Stanwood* with approval).

Therefore, this Court concludes that in the present case jeopardy first attached when McGowan's guilty plea was accepted by the Court on April 19, 1993. Jeopardy did not attach in the civil forfeiture proceeding until September 2, 1993, when a default judgment was entered by this Court. As a result, McGowan's criminal conviction was the first punishment and did not violate double jeopardy. Accordingly, his motion to vacate his criminal conviction under § 2255 must be denied.

## II. *Alternate Grounds for Dismissal*

McGowan's petition may be dismissed on alternate grounds as well. Specifically, the petition must be dismissed because: (1) McGowan was not punished through the civil forfeiture proceedings because he was never a party to the civil forfeiture; and (2) the civil forfeiture does not, in any event, constitute "punishment" for double jeopardy purposes because the property is an instrumentality of the criminal offense, the forfeiture was proportional to the damages caused by McGowan's conduct, and the forfeiture was remedial.

1. *No punishment because McGowan failed to make a claim, was not a party, and was not at risk in the civil forfeiture proceeding, therefore no jeopardy attached.*

■■■ McGowan was not "punished" through the civil forfeiture proceedings because he was not a party to that proceeding. McGowan never filed a claim or an answer, nor did he appeal the default judgment. In order for the Court to determine whether the civil proceeding constituted a punishment, it is sometimes necessary to quantify the value of the petitioner's interest in the seized property to determine the remedial character of the forfeiture. A default results in petitioner losing his standing to make such a claim. Here, McGowan never made a claim in the civil forfeiture and by pleading guilty, admitted that the Mercedes was obtained through the use of drug proceeds.

The Court finds that because he failed to make a claim and thereby defaulted in the civil forfeiture proceeding, he was not at party, was not at risk, and jeopardy did not attach. In short, McGowan made a voluntary choice by not making a claim, thus he has waived his rights to contest the sanction. *See, generally, United States v. Amiel,* 995 F.2d 367 (2d Cir.1993) (for the proposition that where a valid judgment is entered and the appeal is now barred it would appear that the Defendant has no legitimate claim to the seized properties which would vitiate any claim of punishment based upon the civil forfeiture). Accordingly, the sanction was not directly applied against McGowan, hence no jeopardy. *See United States v. Torres,* 28 F.3d 1463, 1465–66 (7th Cir.1994) (non-party is not at risk, jeopardy does not attach, and further prosecution does not constitute double jeopardy); *see also United States v. D'Angelo,* 1995 WL 218587 (N.D.Cal.1995) (recognizing that in the absence of a claim, Defendant was not put in jeopardy and finding that an untimely claim is not a valid one).

Indeed, because McGowan did not make a claim in the forfeiture proceeding, we have no reason to believe that he owned or had any interest in the car. Therefore, because he lacked an interest in the car its forfeiture imposes no penalty and any jeopardy argument must fail. *See United States v. Torres,* 28 F.3d at 1465–66.

2. *The Civil Forfeiture was not "punishment" for double jeopardy purposes.*

■■■ When confronted with double jeopardy questions involving civil forfeitures this Court has steadfastly looked to a line of Fourth Circuit decisions starting with *United States v. Cullen,* 979 F.2d 992 (4th Cir.1992), and *United States v. Borromeo,* 995 F.2d 23 (4th Cir.1993), *modified,* 1 F.3d 219 (4th Cir. 1993), and more recently *United States v. Chandler,* 36 F.3d 358 (4th Cir.1994); and, *United States v. Wild* 47 F.3d 669 (4th Cir. 1995). The Court also relies upon the Fifth Circuit's decision in *United States v. Tilley,* 18 F.3d 295 (5th Cir.1994).

First, in *Cullen,* decided after *Halper,* the Fourth Circuit Court examined a forfeiture *in rem* of a building under 21 U.S.C. § 881(a)(7) and an allegation that the building had been used to facilitate the controlled substance violations charged in the indict-

ment. The Cullens were indicted in the criminal matter prior to the complaint for forfeiture and later pled *nolo contendere* prior to summary judgment being granted in favor of the Government on the subject property.[1] Subsequently, the Cullens claimed the forfeiture constituted double jeopardy and that the value greatly exceeded any costs incurred by the Government. In response to this argument the Fourth Circuit stated:

> Any sanction imposed by the government may have a retributive aspect. This need not mean, however, that the sanction constitutes punishment for the purposes of double jeopardy if the law also serves significant remedial aims. This Court has held ... that these forfeitures do serve broad remedial purposes. *United States v. Santoro*, 866 F.2d 1538, 1543–44 (4th Cir. 1989). Forfeiture reduces incentives to engage in the drug trade, removes instrumentalities of that trade, and helps to finance the government's law enforcement efforts. *Id.* (citations omitted).

*Cullen* at 994. The Court went on to note that "[t]he removal of an instrument of the offense is not primarily an act of punishment; rather, forfeiture protects the community from the threat of continued drug dealing." *Id.* Lastly, the *Cullen* Court stated that, in contrast to *Halper*,

> the government seeks the forfeiture of the Cullens' building not to compensate itself for any costs of investigation or prosecution, but to remove what had become a harmful instrumentality in the hands of the Cullens. The public danger the building poses in the hands of the Cullens bears little relation to its monetary value, small or large.

*Id.*

On other occasions, involving proceeds of illegal activity, the Fourth Circuit Court has looked to Justice Scalia's concurrence in *Austin* and stated that

a close enough connection between the property sought to be forfeited and the criminal activity might support a forfeiture regardless of proportionality. It is arguable that there is little justification for the position that one who successfully parlays his tainted dollar into a fortune should be permitted to enjoy a windfall—a result which a strict focus upon proportionality might bring about in a given case with regard to the proceeds of a crime.

*Borromeo*, 1 F.3d at 221. The Fourth Circuit has wisely interpreted Justice Scalia's concurrence in *Austin* as a rejection of the

notion that proportionality is even a factor to be considered in determining whether an *in rem* forfeiture amounts to an excessive fine under the Eight Amendment and developed an "instrumentality test" for determining whether a particular *in rem* forfeiture amounts to an excessive fine. [*citing Chandler* at 356–366]. This Court held to sustain a forfeiture, a "court must be able to conclude, under the totality of the circumstances, that the property was a substantial and meaningful instrumentality in the commission of the offense, or would have been, had the offense conduct been carried out as intended." *Id.* at 365.

*Wild* at 673.[2]

In reaching this decision the Fourth Circuit looked closely at the nexus between the property and the illegal drug activity. The Court noted that property is subject to forfeiture if it is given in exchange for drugs; if it is "traceable" to a drug transaction; if it is used in committing or facilitating the commission of a drug offense; or if it is intended for such use. *Chandler* at 362; 18 U.S.C. §§ 881(a)(6) & (a)(7). The forfeiture proceedings at issue here were brought under 21 U.S.C. § 881 and 18 U.S.C. §§ 981 and 1956.

1. This is same order as the instant case. McGowan was indicted prior to the civil complaint *in rem* being filed and he pled guilty in the criminal matter prior to default judgment being entered in the civil forfeiture case.

2. The *Austin* case involving Excessive Fines Clause and the *Halper* case involving the Double Jeopardy Clause are related in their evaluation of

whether the forfeiture statutes at issue constitute punishment. *See U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210, 1219 (9th Cir.1994) (*Austin* resolves the "punishment" issue with regard to both clauses and, somewhat redundantly, if "punishment" under the *Halper* criteria then "punishment" under both clauses).

More recently, in *Chandler* the court mandated that the following three factors be considered by the district court when applying the instrumentality test:

> (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder.

*Chandler* at 365–366; *Wild* at 673.

Applying the instrumentality test here, the Court finds that the relationship of the Mercedes to the offense is sufficiently close enough to render the car itself guilty and hence forfeitable. The instant property was involved in the violation of § 1957, obtained in a monetary transaction derived from the illegal sale of cocaine. Accordingly, applying the *Chandler* factors to this case the Court concludes that the *in rem* forfeiture did not amount to punishment.

■ Perhaps even more on point, the Fourth Circuit also noted in *Wild* that

> forfeiture of property neither constituting, nor derived from proceeds of an illegal activity must be distinguished from the forfeiture of property constituting, or derived from, proceeds of an illegal activity. The former is clearly a form of punishment; the latter is not, and thus, is not covered by the Excessive Fines Clause of the Eighth Amendment.

*Wild* at 674, n. 11. Here, the forfeiture involved property that was derived from proceeds of an illegal activity. Along these lines the Eighth Circuit Court added in *United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir.1994) that forfeiture of proceeds cannot be considered punishment, and thus, subject to excessive fines [or double jeopardy] clause, as it simply parts the owner from the fruits of the criminal activity. That is precisely the circumstance here, the forfeiture simply parts McGowan from the fruits of his drug dealing, namely the car which he purchased with drug money.

■ There is little doubt that the Supreme Court's decision in *Kurth Ranch* Court left intact Halper's holding that "a civil penalty may be imposed as a remedy for actual costs to the State that are attributable to the defendant's conduct." —— U.S. at ——, 114 S.Ct. at 1948, *citing Halper* 490 U.S. at 452, 109 S.Ct. at 1904. Accordingly, even though not compelled to do so, *see Chandler,* if the Court were to apply a proportionality test, the record reveals that this is not the "rare case" contemplated in *Halper* where a fixed penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902. McGowan is anything but a small-gauge offender and the forfeiture falls well short of compensating the Government and society for the damage he has perpetrated upon this community.

Recently, in *Crowder* the Court examined the *Tilley* decision and noted that *Tilley* held:

> that forfeiture of proceeds from criminal activities could never be excessive so as to amount to punishment. The reason for this is that the proceeds are directly related to the criminal defendant's drug dealing and illegal gains and, therefore, the harm which he has wrought upon the community. Therefore, the forfeiture of proceeds is always proportional to the damage caused by the criminal defendant and not a punishment for being excessive. Second, the court also reasoned that because the proceeds constitute illegal gains, the defendant was never entitled to such proceeds and, therefore, apparently lacks standing to show that he has been punished by forfeiture.

*Crowder,* 874 F.Supp. at 704; *see also S.E.C. v. Bilzerian,* 29 F.3d 689, 696 (D.C.Cir.1994) (*citing Tilley* with approval).

In *United States v. Ward,* 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980), the Supreme Court made clear that the compensation of both the government *and society* are remedial goals that a civil sanction may serve. In this case the sanction bears a substantial correlation to the damages sustained by society and the costs of enforcing the law.

The offense here, of course, is engaging in monetary transactions in property derived

from unlawful activity, namely drug trafficking. In this case, the Court finds that the forfeiture here was explicitly remedial, designed to measure and define damages and provide reasonable compensation to the Government for its loss caused by McGowan's conduct and to remove the property derived from drug proceeds from the community.

The Court believes that the civil sanction in this case, which represents nothing more than drug trafficking proceeds converted into property simply cannot be considered "overwhelmingly disproportionate."[3] The Supreme Court has recognized that intangible and immeasurable costs to the government are appropriate considerations in determining whether a sanction is remedial or punitive. *Rex Trailer Co. v. United States*, 350 U.S. at 154, 76 S.Ct. at 222.

In this case, the value of the property, which may be in excess of ten thousand dollars represents only a small portion of the total proceeds that McGowan's large scale drug operation obtained over several years through the sale of cocaine. Thus, the forfeited property is likely insufficient to totally compensate the government and society for the wrongs done. *See Tilley*, 18 F.3d at 299.

III. *Conclusion*

In sum, the Court concludes: (1) jeopardy did not attach in the civil forfeiture proceeding until final judgment, therefore McGowan's criminal conviction constitutes a first punishment and is not subject to a double jeopardy claim; alternatively, (2) the civil forfeiture was not punishment with respect to McGowan as he was not a party to the proceeding; (3) the civil forfeiture here was not "punishment" which implicates the Double Jeopardy Clause because the property was clearly derived from the proceeds of an illegal drug operation and money laundering scheme; (4) an application of the *Chandler* test leads this Court to conclude under the

totality of the circumstances that the property was a substantial and meaningful instrumentality in the commission of the offense; and lastly, (5) the Court finds that the forfeiture is more remedial than punitive and is therefore, not barred under the double jeopardy principles delineated in *Halper*.

**NOW, THEREFORE, IT IS ORDERED** that Petitioner's motion to vacate, set aside or correct sentence be, and hereby is, **DISMISSED.**

The Clerk is directed to certify copies of this Order to Petitioner.

---

**3.** Given the vast sums of money spent by State and Federal Governments on drug control activities and the size of the McGowan drug conspiracy, the fine involved here is simply not disproportionate to the damages caused by the wrongful conduct. *See Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1953 (O'Connor, J., dissenting) (providing examples of the expenses associated with drug control activity—approximately $27 billion in fiscal year 1991); *United States v. Tilley,* 18 F.3d at 299 (summarizing various sources which estimate that illegal drug sales produce approximately $80 to $100 billion per year while exacting $60 to $120 billion per year in costs to the government and society).